IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RONALD NELSON BROWN,
       Petitioner,

vs.                                Case No.:  3:14cv294/MCR/EMT

JULIE L. JONES,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 19, 20).  Petitioner filed a reply (doc. 23).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 20).[1]  Petitioner was charged in the Circuit Court in and for Jackson County, Florida, Case No. 2011-CF-21, with one count of fleeing or attempting to elude (high speed

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 20).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

reckless) (*see* Ex. A at 1, 2, 8).  Following a jury trial, he was found guilty as charged (Ex. A at 16, Ex. B).  On July 11, 2011, Petitioner was sentenced to ten (10) years of imprisonment, with pre-sentence jail credit of 185 days (Ex. A at 17–33, 37–42).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-4129 (Ex. A at 48–49, Ex. D).  The First DCA affirmed the judgment per curiam without written opinion on August 21, 2012, with the mandate issuing September 6, 2012 (Exs. G, H).  Brown v. State, 95 So. 3d 216 (Fla. 1st DCA 2012) (Table).  Petitioner did not seek further review.

On January 28, 2013, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I).  In an order rendered June 12, 2013, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty days (Ex. J).  Petitioner filed an amended motion on June 26, 2013 (Ex. K).  The state circuit court summarily denied the motion in part and ordered the State to respond to two of Petitioner's claims (Ex. L).  The State filed a response to those two remaining claims (Ex. M).  The state circuit court then summarily denied them (Ex. N).  Petitioner did not appeal the decision (*see* doc. 1 at 4).[2]

Petitioner filed the instant federal habeas action on June 23, 2014 (doc. 1 at 1).  Four days later, on June 27, 2014, he filed a habeas petition in the First DCA, Case No. D14-2937, alleging ineffective assistance of appellate counsel (Ex. O).  The First DCA denied the petition on the merits on July 16, 2014 (Ex. P).  Brown v. State, 141 So. 3d 1272 (Fla. 1st DCA 1272) (Mem).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

---

[2] The page references to the parties' pleadings reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Case No.:  3:14cv294/MCR/EMT

Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.

In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an

unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 562 U.S. at 102; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits

in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, see 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995)

(quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  Id. at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  See O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  See Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  Id.

procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; see also House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claim.

IV.    PETITIONER'S CLAIM

Ground One: "Admission, over objection, [of] hearsay testimony at trial that violated Sixth Amendment to the United States Constitution."

Petitioner contends the trial court's admission of Yvonne Baker's hearsay statement, through the testimony of Officer Scarborough, violated his Sixth Amendment right to confront witnesses against him (doc. 1 at 5–7). He asserts the hearsay statement at issue was made following law enforcement's attempt to stop a vehicle on January 8, 2011, at approximately 8:25 p.m. (id.). He describes the trial testimony as follows. The Marianna Police Department observed a suspect passing another vehicle in a no-passing zone, failing to stop at a stop sign, and nearly striking a

police cruiser (*id.*). After a short pursuit, the suspect stopped in a neighborhood, and law enforcement saw him run into a nearby residence (*id.*). Officers proceeded to the residence and pounded on the door demanding to enter the residence (*id.*). Yvonne Baker allowed the officer to enter the home (*id.*). Officer Scarborough testified at Petitioner's trial that Ms. Baker was very panicky and gasping for air (*id.*). Scarborough testified that Ms. Baker stated she needed her nebulizer to counter an apparent asthma attack (*id.*). Scarborough testified that the officers questioned Ms. Baker regarding the whereabouts of the person who had just entered the home, and she responded, "He run through the house," implying that the person was in the back of the house (*id.*). The officers proceeded to the back of the house, where they discovered Petitioner and arrested him (*id.*). Petitioner contends the trial court's admission of Ms. Baker's hearsay statement, "He run through the house" violated the Sixth Amendment, because the statement was testimonial, the witness was not available to testify, and Petitioner had not been provided a prior opportunity to cross-examine her (*id.*). He asserts he raised this claim on direct appeal of his conviction (*id.* at 5).

Respondent contends Petitioner failed to fairly present his federal claim to the state courts (doc. 19 at 6–8). Respondent contends Petitioner argued on direct appeal that the trial court erred in admitting the hearsay statement under the excited utterance exception, and this error was unduly prejudicial; however, this is not the same argument that Petitioner raises here—the trial court's admission of the statement violated his rights under the Confrontation Clause of the Sixth Amendment (*id.*). Therefore, the claim is unexhausted (*id.*). Respondent contends Petitioner failed to show cause for the procedural default; therefore, the claim is procedurally barred from federal review (*id.* at 8). Respondent additionally contends notwithstanding the procedural default, the claim is meritless, because Ms. Baker's statement was properly admitted under the excited utterance exception (*id.* at 8–10).

In Petitioner's reply, he contends appellate counsel was ineffective for failing to argue the Sixth Amendment issue on direct appeal (doc. 23). He asserts he raised this claim of ineffective assistance of appellate counsel ("IAAC") in his state habeas petition, but the First DCA denied relief (*id.*).

Respondent's exhaustion argument is supported by the record. On direct appeal, Petitioner argued that the trial court erred in admitting Ms. Baker's hearsay statement that a man had run

through the house (Ex. D at 12–16).  Petitioner argued the statement was not properly admitted as an excited utterance under the Florida Evidence Code, because the State failed to lay a sufficient foundation for finding that the statement was triggered by someone running through the house, as opposed to the excitement of having a police officer pound on the door (*id.*).  Petitioner additionally argued the statement did not qualify as an excited utterance under Florida law because it was made in response to police questioning (*id.* at 14–15).  Neither Petitioner's claim nor his brief cited to any federal cases, let alone <u>Crawford v. Washington</u> 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) or <u>Davis v. Washington</u>, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006); he did not mention the <u>Crawford</u> standard; he did not cite to the Confrontation Clause of the Sixth Amendment or any other federal constitutional provisions; indeed, he did not even mention the word "federal" or refer to federal law in any way.  Petitioner framed his claim in terms of state law without making any reference to federal law, and in the body of his argument he made no specific reference to the United States Constitution or federal law, and he cited no federal cases.  He argued Florida law only.  Nothing in Petitioner's brief put the state court on notice that the issue was being presented as a federal constitutional claim, let alone a claim under the Confrontation Clause of the Sixth Amendment.  The undersigned thus concludes that Petitioner failed to exhaust his Sixth Amendment claim.

Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claims would be procedurally barred under Florida law.  *See* <u>Rodriquez v. State</u>, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); <u>Smith v. State</u>, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").  Therefore, Petitioner is not entitled to a merits review of his claim unless he satisfies the "cause and prejudice" standard, or demonstrates he is entitled to review of his claim through another recognized exception to the procedural bar.

Petitioner contends his procedural default was caused by his appellate counsel's failure to raise the Confrontation Clause claim on direct appeal (*see* doc. 23).  He asserts, and the state court records confirms, that he presented this IAAC claim to the state courts in his state habeas petition, wherein he argued that appellate counsel was ineffective for failing to argue on appeal that the trial

court's admission of Ms. Baker's hearsay statement violated the Confrontation Clause of the Sixth Amendment, because Ms. Baker's statement was testimonial, she was unavailable, and Petitioner did not have a pre-trial opportunity to cross-examine her (Ex. O). The First DCA denied Petitioner's IAAC claim on the merits (Ex. P).

The First DCA's decision is due deference under 28 U.S.C. § 2254(d) unless Petitioner demonstrates that the decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see* Bishop v. Warden, GDCP, 726 F.3d 1243, 1258–59 (11th Cir. 2013) (applying AEDPA deference to state court's rejection of claim asserted as "cause" for petitioner's procedural default)); *see also* Henderson v. Campbell, 353 F.3d 880, 897 n.23 (11th Cir. 2003).[7] Because the First DCA's decision was summary in nature, petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for [its] decision." Cullen v. Pinholster, —— U.S. ——, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011) (quoting Richter, 131 S. Ct. at 786). The duty of a federal habeas court in these circumstances is clear and was clearly restated by the Supreme Court in Cullen: "[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Cullen, 131 S. Ct. at 1402 (quoting Richter, 131 S.Ct. at 786).

---

[7] In the Eleventh Circuit, when the district court reviews a state court's resolution of an ineffective assistance claim in the cause-and-prejudice context, the court applies the same deferential standard as it would when reviewing the claim on its own merit. In other words, ineffective assistance only provides cause to excuse a procedural default if the state court decision with respect that ineffective assistance claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Other circuit courts also follow this approach. *See* Richardson v. Lemke, 745 F.3d 258, 273 (7th Cir. 2014); *see also* Jackson v. Lafler, 453 F.App'x 620, 624 (6th Cir. 2011) (unpublished) (giving AEDPA deference to state court's rejection of "cause" for procedural default; Sigala v. Quarerman, 338 F. App'x 388, 393 (5th Cir. 2009) (unpublished) (same); Roberson v. Rudek, 446 F. App'x 107, 109 (10th Cir. 2011) (unpublished) (implicitly agreeing with the approach of the Eleventh and Seventh Circuits by affirming district court's invocation of AEDPA deference). However, at least two other circuit courts review "nested" ineffective assistance issues de novo. *See, e.g.*, Hall v. Vasbinder, 563 F.3d 222, 236–37 (6th Cir. 2009) (applying de novo standard of review in the cause and prejudice context); Fischetti v. Johnson, 384 F.3d 140, 154–55 (3d Cir. 2004) (same, but relying on pre-AEDPA decision of Coleman v. Thompson, 501 U.S. 722, 755 (1991) in support)).

The standard for evaluating a claim of ineffective assistance of appellate counsel is the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See* Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 746 (2000) (citation omitted). The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. The focus of inquiry under the performance prong of Strickland is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, a petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, he would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir.1988)).

Because the federal court's evaluation of counsel's performance under Strickland is deferential, as is the court's review of claims adjudicated on the merits by the state courts, the result is "double deference," which is extremely difficult for a petitioner to overcome. Evans v. Sec'y, Fla.

Dep't of Corr., 699 F.3d 1249, 1268 (11th Cir. 2012).  "[I]t will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."  *Id.*  The instant case is not one of those rare cases.

Petitioner faults appellate counsel for failing to argue on direct appeal that the trial court's admission of Ms. Baker's hearsay statement, through the testimony of Officer Scarborough, violated the Confrontation Clause.  The Confrontation Clause prohibits the admission of a declarant's out-of-court testimonial statements unless the declarant was unavailable and the defendant had a previous opportunity to cross-examine the declarant.  *See* Crawford v. Washington, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).  However, the Confrontation Clause does not prohibit the admission of non-testimonial statements.  *See id.*, 541 U.S. at 68 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law.").  As the Eleventh Circuit explained:

> [F]ormal statements to government officers are generally testimonial as are affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.  Similarly, extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial, fall within the core class of testimony.

United States v. Caraballo, 595 F.3d 1214, 1228 (11th Cir. 2010) (brackets and alterations omitted).

In Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the Supreme Court refused to limit Confrontation Clause protections to formal testimonial statements. 547 U.S. at 825–26.  The question in Davis was whether, objectively considered, an interrogation that took place in the course of a 911 call produced testimonial statements.  The events in Davis began with a call to a 911 operator that terminated before anyone spoke, prompting the operator to return the call.  547 U.S. at 817.  Michelle McCottry answered, and when the operator asked her what was going on, she said, "He's here jumpin' on me again . . . .  He's usin' his fists."  *Id.*  As the conversation continued, McCottry reported that her former boyfriend had just run out the door after hitting her.  *Id.* at 818.  The 911 operator then gathered information about the former boyfriend, and McCottry described the assault.  *Id.*  McCottry did not appear at the subsequent trial, but the state

introduced the 911 tape.  *Id.* at 819.  The Court concluded that "the circumstances of [the victim's] interrogation objectively indicated its primary purpose was to enable police assistance to meet an ongoing emergency.  She simply was not acting as a witness; she was not testifying.  What she said was not 'a weaker substitute for live testimony' at trial . . . .  No 'witness' goes into court to proclaim an emergency and seek help. "  *Id.* at 828.  The Court held:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.  In establishing the non-testimonial nature of the 911 caller's statements, the <u>Davis</u> Court relied on the following factors:  (1) the content of the declarant's statement, noting that she spoke about events as they were actually happening, rather than describing past events; (2) the perspective of the declarant, who was facing an ongoing emergency, rather than simply reporting a crime; (3) the nature of what was asked and answered, which involved questions and answers relevant to resolve the emergency; and (4) the relative level of informality of the interview, which was conducted by a 911 operator in a chaotic atmosphere.  <u>Davis</u>, 547 U.S. at 827.

In the jointly decided case of <u>Hammon v. Indiana</u>, police responded to a reported domestic dispute at the home of Amy and Hershel Hammon.  547 U.S. at 819.  The officers found Amy "alone on the front porch, appearing somewhat frightened, but she told them that nothing was the matter." *Id.* (internal quotation marks omitted).  One officer dealt with Hershel, insisting that he stay separated from Amy to allow the officers to investigate what happened.  *Id.* at 819–20.  In another room, the other officer questioned Amy about what had occurred and, after listening to her account, asked her to complete a battery affidavit.  *Id.*  She wrote: "Broke our Furnace & shoved me down on the floor into the broken glass.  Hit me in the chest and threw me down."  *Id.* at 820 (internal quotation marks omitted).  Amy did not appear at Hershel's trial, but the police officers testified regarding her statements and authenticated the affidavit.  *Id.* at 820–21.  The Court held that the statements in <u>Hammon</u> were testimonial.  There was no "immediate threat" to the speaker, and law enforcement "was not seeking to determine (as in <u>Davis</u>) 'what is happening,' but rather 'what

happened.'" *Id.* at 830. "It was formal enough that Amy's interrogation was conducted in a separate room, away from her husband (who tried to intervene), with the officer receiving her replies for use in his investigation." *Id.* (internal quotation marks and brackets omitted). Amy's statements in response to police questioning were "an obvious substitute for live testimony, because they d[id] precisely what a witness does on direct examination." *Id.*

The Court faced a new context in <u>Michigan v. Bryant</u>, ⸺ U.S. ⸺, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011): a non-domestic dispute involving a victim found in a public location, suffering from a gunshot wound, and a perpetrator whose location was unknown at the time the police located the victim. 131 S. Ct. at 1156. The Court thus confronted for the first time circumstances in which the "ongoing emergency" extended beyond an initial victim to a potential threat to the responding police and the public at large. *Id.* The case required the Court to provide additional clarification with regard to what the <u>Davis</u> Court meant by "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* (citing <u>Davis</u>, 547 U.S. at 822).

In <u>Bryant</u>, police officers responded to a radio dispatch indicating that a man had been shot. 131 S. Ct. at 1150. At the scene, they found the victim, Mr. Covington, lying on the ground next to his car in a gas station parking lot. Mr. Covington had a gunshot wound to his abdomen, appeared to be in great pain, and spoke with difficulty. *Id.* The police asked him "what had happened, who had shot him, and where the shooting had occurred." *Id.* Covington stated that "Rick" shot him at around 3:00 a.m. *Id.* He also indicated that he had a conversation with the defendant, Richard Bryant, whom he recognized based on his voice, through the back door of Bryant's house. *Id.* Covington explained that when he turned to leave, he was shot through the door and then drove to the gas station, where police found him. *Id.*

Evaluating the <u>Davis</u> factors, the Court concluded that based upon Covington's description of his condition and the report of his statements, a person in Covington's situation would not have had a "primary purpose" "to establish or prove past events potentially relevant to later criminal prosecution. <u>Bryant</u>, 131 S. Ct. at 1165. Further, the questions asked by the police were "the exact type of questions necessary to allow the police to assess the situation, the threat to their own safety, and possible danger to the potential victim and to the public." *Id.* at 1166 (internal quotation marks

and citations omitted).  Additionally, the situation was fluid and somewhat confused; the officers did not conduct a structured interrogation, and the circumstances lacked any formality that would have alerted Covington to or focused him on the possible future prosecutorial use of his statements. *Id.* at 1166.  The Court held that because the circumstances of the encounter, as well as the statements and actions of Covington and the police, objectively indicated that the "primary purpose of the interrogation" was "to enable police assistance to meet an ongoing emergency," Covington's identification and description of the shooter and the location of the shooting were not testimonial hearsay, and the Confrontation Clause did not bar their admission at Bryant's trial.  *Id.* at 1166–67.

In the instant case, the circumstances of Ms. Baker's hearsay statement were described by Officer Tyler Scarborough at Petitioner's trial.  Officer Scarborough testified that he was in the vicinity of Orange Street and Old Cottondale Road at 8:00 p.m. on January 8, 2011 (Ex. B at 19). He testified he heard gunshots in the area, and he proceeded toward the gunshots in his patrol car (*id.* at 20).  Officer Scarborough testified he observed a white Ford Explorer approach him at a high rate of speed (*id.* at 20–21).  He testified the vehicle moved into his lane to pass another vehicle and approached his patrol car head-on, requiring him to make evasive movements to the right to avoid being hit head-on (*id.* at 21).  Officer Scarborough testified he radioed Officer Hatcher, who was also in the area, and described what had occured (*id.*).  Scarborough testified he activated his lights and siren and attempted to catch up with the white Explorer, but the vehicle did not yield at all (*id.* at 22).  He testified that the vehicle remained at a high rate of speed and fish-tailed through an intersection (*id.* at 23).  Officer Scarborough testified that Officer Hatcher approached from another direction and "fell in" behind the Explorer with his lights and siren activated (*id.* at 23). Scarborough testified that he observed his speedometer during this time, and it registered 75 mines per hour (*id.* at 23–24).  He testified that the speed limit on the road on which the vehicles were traveling was 25 miles per hour, and the road was used for a lot of pedestrian traffic, including children (*id.* at 24).  Scarborough testified that he and Officer Hatcher chased the Explorer for approximately three-quarters of a mile until the driver finally stopped (*id.* at 25).  He testified that the driver exited the Explorer, and he (Scarborough) exited his patrol car and observed the driver run behind a house on Harrison Street (*id.* at 29–30).  Scarborough testified he chased the driver and

maintained visual contact until the driver ran alongside a building and reached Harrison Street (*id.* at 30).  Scarborough testified he chased the driver across Harrison Street to another residence (*id.* at 31).  He testified that Officer Hatcher "picked up" the chase and notified him that the driver had run into a residence (*id.*).  Officer Scarborough testified he went to the front door of the residence (*id.* at 31–32).  Scarborough testified he began beating on the front door and forcefully demanding entrance, in an attempt to summon someone to the door (*id.* at 32–33).  He testified he was allowed in the house by a black female who represented herself as "the aunt" (*id.* at 33).  Officer Scarborough testified that the woman "was in like a panic attack, she was breathing real hard." (*id.*).  Scarborough testified he observed a small child in the house and another adult (*id.*).  He testified that the woman was "very panicky, she was gasping for air, she advised me that she needed to get to her nebulizer, she needed to take her medicine because she was going into some kind of an attack" (*id.* at 34).  The prosecutor's examination continued:

> Q.  Did you ask her where the individual who had entered that house had gone?
>
> A.  Yes, sir, I did.
>
> Q.  Did she answer you?
>
> A.  Yes, sir.
>
> Q.  Where did she say he had gone?

(*id.* at 34).  Defense counsel objected on hearsay grounds (*id.*).  The court conducted a sidebar:

> THE COURT:  We're at sidebar, defendant is present, defense attorney, and prosecutor. The objection is hearsay.
>
> MR. WILSON [the prosecutor]:  I laid the predicate for an excited utterance, if we're talking about the event that he asked about, where did the guy go, happened in less than a minute [sic].  He came in, he was in a loud voice [sic], she was in such a panic attack she needs a nebulizer just to breathe.  There was one question and there was a spontaneous answer, the state believes that the quintessential definition of excited utterance [sic].
>
> MS. SIMPSON [defense counsel]:  She wasn't listed as a witness, she was looked for recently I know, but she's not a witness, so her statements, I don't get to cross-examine her, I don't know her state of mind, I don't know what was going on in the residence prior to that.  She had a child in her hand, she could have been panicked because of the child being upset, we don't know what was happening.

THE COURT:  Well, the excited utterance exception, he's met the requirements for that.  Now, the objection as to whether this person was listed on a witness list or anything like that, they're not calling that person as a witness, I don't presume.

MR. WILSON:  No, I got her name and address for counsel.

THE COURT:  For Ms. Simpson?

MR. WILSON:  Yes, sir.

MS. SIMPSON:  We found out her name, and we understood she wasn't available.  This is the first time we're hearing that Mr. Scarborough asked her any statements [sic] and that there is any excited utterances.

THE COURT:  I'm going to find it's an excited utterance, it's a known hearsay exception, it's allowed in, as long as it's just that.

MS. SIMPSON:  We still object for the record.

THE COURT:  Show a continuing objection.

(Ex. B at 34–36).  The sidebar concluded, and the prosecutor resumed questioning of Officer Scarborough:

Q.  (By Mr. Wilson)  Did you ask this elderly woman, who identified herself as the aunt, where the person was that you were chasing had gone?

A.  Yes, sir, I did.

Q.  What did she tell you?

A.  She told me that he run [sic] through the house.

(Ex. B at 36).

Assuming arguendo that the Confrontation Clause issue was preserved for appellate review, the undersigned finds no basis for concluding that the state habeas court's determination—that appellate counsel was not ineffective for failing to raise the issue—was contrary to, or an unreasonable application of, Strickland.  The First DCA's decision could have been based upon the theory that appellate counsel could have reasonably considered the Confrontation Clause issue to

be without merit.  Officer Scarborough was investigating the source of gunshots when he was nearly hit head-on by a driver who then led officers on a high speed car chase and then a foot chase in a residential area.  During pursuit, Officer Hatcher saw the suspect run into the house occupied by Ms. Baker.  Ms. Baker opened the door in response to the officers' pounding and demanding entrance, and she appeared to be panicking and gasping for air.  The question asked by Officer Scarborough (where did he go?) was the type of question necessary to allow the police to end the danger posed to the public by the fleeing suspect who could have been armed.  Ms. Baker's answer ("he run [sic] through the house") described one part of a sequence of events that was still unfolding.  When Officer Scarborough asked the question, the situation was fluid and somewhat chaotic, and the circumstances lacked any formality that would have alerted Ms. Baker to, or focused her on, the possible future prosecutorial use of her statement.  Her perspective was not reporting a crime but resolving an ongoing emergency. Appellate counsel thus could have reasonably concluded that the primary purpose of Officer Scarborough's question and Ms. Baker's answer was to enable police assistance to meet an ongoing emergency; therefore, her hearsay statement was not "testimonial" for purposes of the Confrontation Clause.  See United States v. Liera-Morales, 759 F.3d 1105, 1109–10 (9th Cir. 2014) (hostage's mother's statements to federal officer describing her conversation with her son's captors occurred in an "informal high-stress environment" and served the primary purpose of assessing whether the hostage was still alive, determining the nature and extent of the hostage situation, and ensuring the hostage's safety, and thus were not "testimonial" for Confrontation Clause purposes);  see also, e.g., Hilson v. Junious, No. CV-11-0072-MWF (JEM), 2013 WL 5574989, at *13 (C.D. Cal. Oct. 8, 2013) (unpublished) (declarant's statement in a police car identifying the person who robbed him—"that's him, that's him"—was not "testimonial" in nature; the primary purpose of the statement was to assist officers in apprehending the perpetrator who was still at large); Parham v. McDonald, No. CV-11-8479-RGK (JC), 2013 WL 4502066, at *9 (C.D. Cal. Aug. 21, 2013) (unpublished) (witness's on-the-scene statements to police shortly after the crime occurred and with an armed suspect on the loose, served the immediate purpose of meeting the emergency at hand and thus were not "testimonial" for Confrontation Clause purposes); Vasquez v. Runnels, No. C005-4669-MMC (PR), 2011 WL 1696040, *9–10 (N.D. Cal.

Apr. 20, 2011) (unpublished) (victim witnesses' on-the-scene statements to police shortly after the crime occurred and with a possibly still-armed suspect on the loose, served the immediate purpose of meeting the emergency at hand and thus were not "testimonial" for Confrontation Clause purposes); Reardon v. Sheets, No. 3:08cv614, 2009 WL 3765999, at *2–3 (N.D. Ohio Nov. 10, 2009) (unpublished) (same).

The state court's adjudication of Petitioner's IAAC claim was not contrary to or an unreasonable application of Strickland.  Therefore, the claim cannot serve as "cause" to overcome the procedural default of Petitioner's claim of trial court error asserted in Ground One.  Petitioner has not shown he is entitled to federal review of Ground One through any other recognized exception to the procedural bar.  Therefore, the habeas petition should be denied.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 14th day of May 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.